Hitchcock, C. J.
Many errors are assigned in this case upon the record, and the points raised have been elaborately argued.
The original action was ejectment for a lot of ground in Cincinnati, upon which one of the public school houses of the city is erected. Upon the trial of the case, exceptions were taken to the testimony, as it was offered, and also to the charge of the court. These matters will be considered in the order in which they are presented.
The record shows that both parties claim title under Henry B. B. Baber.
In order to sustain his action, the plaintiff proved that Baber was seized of the premises in controversy, as early as the 8th February, 1816, and so continued until the 25th March, 1821. On the latter day he executed a deed for the same, to Newnam, the lessor of the plaintiff, and received the whole purchase money. This deed was not attested by witnesses. Newnam took possession of the property and continued in possession, until 1828, when he went “ down the river,” and in his absence his wife either left the premises voluntarily, or was put out of possession. The premises were then taken possession of by some colored persons, who remained in possession until 1835, when the defendant entered into possession, erected a school house, and has continued in possession ever since.
It is proper here to inquire whether the plaintiff, by this evidence, made out a prima facie case for a recovery ? And to me it seems not only proper, but necessary, in consequence of the charge of the court, which will be hereafter considered. *326 To my mind it seems clear, that the case made was such as necessarily to put the defendant upon her defense. Newnam had not, it is true, the legal title, because the deed under which he claimed was attested by but one witness.
Still he had a perfect equitable title, and the possession. This possession alone, and especially when connected with the equitable title, would enable him to maintain ejectment against a stranger, who should afterward dispossess him. Whatever might be the state of the case as between him and Baber, no stranger had a right to intrude upon him.
Under the facts so far proved, it would have been erroneous for the court to have directed a judgment of nonsuit.
The plaintiff having rested, the defendant, to prove the issue on her part, first offered in evidence a copy of a deed from Henry B. B. Baber, bearing date 17th April, 1816, conveying the premises in controversy to David Kilgore and Thomas Dugan, in trust, and to secure the payment of a note due from the said Baber to one James Morrison, for the sum of $972.94, payable eight months after the date of the deed of trust.
This deed is not in the common form of a mortgage deed, but is strictly and technically a deed of trust, and the grantees are authorized to sell the land at public auction, after giving notice, if the debt to Morrison is not paid.
The deed was objected to, on the ground that there was no proper proof of acknowledgment. Had the original deed been produced, it would not have been necessary to prove any acknowledgment, to give it validity as between the parties, but it was necessary that a deed should be acknowledged, in order that it might be recorded. And the instrument here introduced, or offered as evidence, purported to be a copy from the records of Hamilton county.
The deed purports to have been executed in the State of Kentucky. By the statute of this state in force at the time of the execution of this deed, it was provided, in substance, that deeds executed and proven, or acknowledged in other states, in accordance with the laws of those states, should be available *327 to convey lands in this state, and might be admitted to record in the same manner as if such deeds had been executed and acknowledged in conformity with the laws of this state.
By the law of Kentucky, in force at the time this deed was executed, it is provided that “if any person making .a deed of conveyance shall acknowledge the same in any county court in this commonwealth, or if it shall therein be proven by two credible witnesses, or if he shall acknowledge it in the office of any such court, before the clerk thereof, or if it shall be proved in such office, before the clerk, by two credible witnesses, it shall be lawful for the clerk to certify the same on such deed; and being duly certified, etc., shall authorize the same to be recorded,” etc.
The deed now under consideration was attested by William Sutherland, Michael Ryan and H. Payne. Upon the deed is the following certificate:
“ State of Kentucky, Mason county, ss,
“ I, Marshal Key, clerk of the county court of said county, do certify that this deed of trust from H. B. B. Baber, to David Kilgore and Thomas Dugan, was this day proved by the oaths of William Sutherland and H. Payne, witnessess thereto, before me according to law, and the same is duly recorded in my office, which is certified to the recorder of Hamilton county, in the State of Ohio. In testimony whereof I have hereunto set my hand and the seal of said county, this seventh day of September, 1816.
“[Seal of county.] MARSHAL KEY.” '
It is objected by the counsel, that this certificate is informal and insufficient, but we cannot see wherein it is not in substance, in compliance with the law before recited. It might have been more specific, but as it is, it seems to the court that it furnishes sufficient evidence that the deed was proved before the clerk of the Mason county court, by two of the subscribing witnesses thereto, who must, in making such proof, have sworn to its execution by the grantor.
*328 It is objected, however, that there is no evidence of the official character of Marshal Key, and seems to be supposed that his certificate should be verified, as in cases of judicial proceedings, under the law of the United States. This is not necessary, nor is it a case within the provisions of the United States law. The certificate is under the seal of the proper court, and by the seal is sufficiently authenticated.
In the opinion of this court, the superior court did not err in overruling the objections of the plaintiff to the reception of this deed in evidence.
Under this deed of trust the land might have been sold, as it seems to the court, according to the terms of the deed, without the intervention of a judicial tribunal. The grantees, however, elected to consider it as a mortgage, and the defendant, in further making defense, offered in evidence the copy of a record from the court of common pleas of Hamilton, to show that the equity of redemption in said trust deed, had been foreclosed. In connection with this copy of a record, sundry entries in the docket, blotter and minute book of said court, made during the pendency of the bill for foreclosure, were offered in evidence. All these items of evidence were objected to by the plaintiff, but his objections were overruled, and the same were received by the court. This is assigned for error.
An objection is made by one of the counsel for the plaintiff, because, as is said, the deed was not a mortgage deed, but an absolute deed, conveying the whole title to Kilgore and Dugan. If this were so, there would be an end of the plaintiff’s case. Upon this hypothesis the title passed out of Baber in 1816, and he had nothing in the land at the time he made the deed to Newnam in 1821. Let this be as it may, however, I suppose there can be no doubt but that Dugan, Kilgore and Morrison might go into a court of chancery to foreclose the equity of redemption, and to procure a sale of the land.
This record shows that on 21st of July, 1817, a bill was filed in the court of common pleas of Hamilton county, by Morrison, Kilgore and Dugan upon this deed as a mortgage. The *329 bill is very specific in all its charges, and prays that unless payment is made within a short time to be fixed by the court, the land may be sold, etc. In the bill Baber is spoken of as having been a resident of Cincinnati at the date of the deed, and he alone is made defendant.
The record further shows that a subpoena was issued and returned at the July term, 1817, by the sheriff of Hamilton county, indorsed not found.
It further shows that the cause was continued from term to term until the May term of the court, 1822, when a decree was entered. In this decree the court ascertain the amount due, and direct that unless the same shall be paid within thirty days the land shall be sold as upon judgments and executions at law. It is asserted in the decree that due proof of publication in the case had been made; and the cause was again continued for the sale of the premises. An order of sale was issued, and the land was appraised and a return of the appraisement made to the court. At the December, term of the court, 1823, a further decree is made that the land be sold pursuant to this appraisement.
Various objections are made to this record, and perhaps it is not as formal as it might be. But we are not now to act upon this record, as if the same was before us on bill of review. The attempt now is to impeach it collaterally, and it certainly must be unnecessary to go into an argument or to cite authorities to prove that a judgment or decree cannot be collaterally impeached, no matter how erroneous, provided the court réndering the judgment or decree had jurisdiction. This principle is admitted by the counsel for the plaintiff, but it is strongly urged that the court had not jurisdiction of the case.
That the court had jurisdiction of the subject-matter before them there can be no doubt. The land mortgaged was in Hamilton county. The proceedings then to foreclose the mortgage must be in that county, and the court of common pleas of that county had jurisdiction of the subject-matter. But it is said *330 the court had not jurisdiction over the person.- The -record shows that a subpoena issued in the case, had been returned, indorsed “ not found,” and the decree shows that publication of the pendency of the suit had been proved. This mode of giving notice to a non-resident defendant in chancery was provided expressly by the act regulating proceedings in chancery, of 19th February, 1810, the act in force at the time these proceedings were had. Chase’s St. 685. This particular provision of the act, however, only applied to cases where a part only of the defendants were out of the state. By the amendatory act of Dec. 24,1812, (Chase’s St. 786,) it is’provided “ that where all of the defendants are absent or reside out of the state, it shall be competent for the courts- of this state, having proper jurisdiction of the case according to the law and usages of courts of chancery, to direct any mode of giving notice to such absent defendant or defendants, as may be consistent. with the usages and practices of courts of chancery.”
Under this discretionary power, the court might with propriety adopt the same mode of giving notice where all of the defendants are out of the state, as the general assembly had prescribed where only a part of them were out of the state. This does not seem to be questioned, nor is it questioned that publication was made, but it is claimed that this mode of giving notice should be preceded by an order of court. In a' record, where the fact is found by the court that publication was made, I should not hesitate, where the attempt is made to impeach the judgment or decree collaterally, to presume that the necessary order had been made. But no presumption is necessary in the case under consideration. It appears from the bill of exceptions that at the March term, 1817, an order for publication was made. It is objected, however, that-in this order there was a mistake in the name of the defendant. But if there be any force in this objection, it is removed by a subsequent order for publication, made at the November term, 1817, where there is no mistake as to the name. This order was not carried into the complete record of the judgment, and therefore *331 it is claimed that it cannot now be adduced in evidence. The fact that the clerk did not perform his entire duty in making up the record cannot deprive parties of their rights. Even although he should entirely fail to make up a record, such neglect would not affect those interested in the matter decided, if sufficient could be found upon the files and books of the court to show what had been done. What we call the complete record in a case, is nothing but a history of what has been done in the case, copied by the clerk into a book called the book of records. It is not the writing of those things in this book which gives them validity. It is the previous action of the court upon the subject-matter. The record is but evidence of this action, and if in copying, the clerk makes a mistake, that mistake will be corrected by entries made from time to time of the action of the court, and which entries made in other books of the court, lay the foundation for the complete records.
But it is claimed that this was not a proper case for notice by publication, because it is not charged in the bill that Baber was a non-resident. This was not necessary. A subpoena was issued and returned “ not found.” This was prima fade evidence at least that he was not in the county. Upon satisfactory evidence to the court that he was not a resident of the state, the court would order publication. Having ordered publication, we must presume the fact of non-residency was previously ascertained.
Council attempt to assimilate this case to one before a court of limited jurisdiction. In such courts it is necessary that the pleadings should show that the case is within the jurisdiction of the court. It is upon this principle the cases referred to in the United States Reports are decided. These courts are strictly courts of limited jurisdiction. The courts of common pleas of this state are courts of general jurisdiction.
It seems to this court that there was no error in receiving in evidence the copy of the record, and the accompanying entries in the docket, blotter and minute book of the court of common pleas.
*332 The defendant next offered in evidence copies of the order of sale and other documents, and evidence to prove a sale pursuant to the decree, which were objected to, but received by the court, and we think properly.
The land was sold at public outcry, to Nicholas Longworth, and the sale approved by the court, and a deed ordered. A deed was made accordingly, which was offered in evidence, but objected to ; but the court rightly overruled the objection, and permitted the evidence to go to the jury.
The defendant then introduced evidence to prove, that the title, thus made to Longworth, had, through intermediate conveyances, 'become vested in the defendant.
To rebut the evidence on the part of the defendant, the plaintiff offered to prove, that the defendant was notified of the claim of the plaintiff to the lot in controversy, before purchasing the lot. This was objected to, and the objection sustained, which is complained of as error. Such notice would be of consequence in a proper case, where the proceeding was in chancery ; but we do not perceive how it could affect the title, in a case at law, like the present.
The plaintiff next offered to prove, that Baber was not served with process, and that he was not notified of the pendency of the suit in chancery. This was not allowed, and herein it is claimed that the court erred. The record itself shows that he was not served with ordinary process. Whether the court had jurisdiction, depended upon the question whether publication was made, pursuant to the order of court. That such publication was made, was proved to the court before decree rendered. The fact proved, in a trial in which it -was attempted to impeach the decree collaterally, that Baber did not receive actual notice, would not divest the court of jurisdiction. The proposition was, not to prove that there was no publication, but that Baber did not receive notice. The decision of the superior court, upon this point, can be sustained, without resorting to the general rule, that a record cannot be contradicted by extrinsic evidence.
*333 The evidence being closed, the plaintiff requested the court to charge the jury specifically, upon eleven propositions set forth in the bill of exceptions. I do not deem it necessary to note those propositions particularly. They were most of them hypothetical, and it seems to me, the evidence and circumstances of the case would not require or justify the court in charging the jury as requested.
“ The court charged the jury that the foreclosure proceedings were not a suit ” pendente lite, against said Baber, until after “ he had sold the premises to Newnam, and Newnam had entered thereon.” The plaintiff requested the court to charge the jury, that said proceedings constituted no bar to the plaintiff’s right to recover, which was refused, and we think properly.
The court further charged the jury “ that the plaintiff had not shown or proved any title in or to the said premises, and that he could not recover in this action. That the defendant had shown a good legal title to said premises, and was entitled to a verdict in her favor in this action,” which charge was excepted and is assigned for error.
It seems to this court, that in giving a charge in these words, the superior court exceeded those limits by which it should be controlled. It assumed to itself the prerogative of deciding as well the facts as the law of the case. It might be difficult for that court — it is difficult for this court — taking the whole case together, to see upon what recognized principle the plaintiff can ever expect to recover. But it is a constitutional right, secured to parties litigant, to have the controversy decided by a jury, where that controversy is in a court of law. A jury, in ordinary cases, must receive the law as announced by the court, but of the facts they are the exclusive judges. In the case under consideration, it was proper for the court to construe all the written matters in evidence, to declare their legal effect, or the legal effect of each one of them. But there was other evidence in the case, which is not detailed in the bill of exceptions. Probably that evidence would not change the result.
*334 When the plaintiff closed the evidence on his part, he had, as before stated, made out a prima fade case ; a case upon which he must have recovered, but for the evidence introduced by the defendant. Whether this prima fade case was destroyed, by the evidence introduced on the other side, it was for the jury to say, acting under the instruction of the court. When I say, acting under the instruction of the court, I do not mean that the court are to instruct the jury to find for one party or the other, in general terms, but the instruction must be confined to the legal effect of the evidence.
The court might have said to the jury, had there been no controversy as to facts, that the law upon the facts proved or agreed, was with the defendant. But in the general instructions given, it seems to us that the court improperly interfered with the province of the jury.
But it is said that, although the court may have erred in the particular complained of, still taking the whole case together, it is apparent that right and justice have been done — that another trial must result in a similar verdict; therefore, it is improper or useless to reverse the judgment for what may be denominated a technical error.
We do not consider this a mere technical error. But we look upon it as an invasion, by the court, of the province of the jury, which should always be guarded against; and although, upon the whole case, as exhibited to us, we are of opinion that the plaintiff has no claim, either in law or equity, to the premises in controversy, we feel ourselves bound to reverse the judgment. Under a proper charge, the verdict might have been different. The verdict would still have been under the control of the court, upon a motion for a new trial; and if against the law and evidence, might have been set aside, and a new trial granted. But in every case, it is right to presume that, where the same is fairly submitted to a jury, and the law properly stated, the verdict will be in accordance with the law and evidence.
The judgment is reversed, and the cause remanded for fur ther proceedings.